## George Lord and Others v. H. Norton Strong and Others.

By a contract between plaintiffs and defendants, the latter bound themselves to con-
vey, from Saginaw to Chicago, six vessel loads of lumber, at a specified price, as
follows: One in August, two in September, two in October, and one in Novem-
ber. Defendants carried but five, as follows: One in August, one in September,
one in October, and two in November. Freights rose slightly in October, and
largely during November. In an action brought by plaintiffs for neglect to carry
the sixth cargo, there being no evidence of any agreement of the parties, or elec-
tion by defendants, to apply the extra cargo carried in November to the default
in September or October, — *Held*, That defendants had a right to have the extra
cargo carried in November, stand as a substituted performance for the cargo
which they failed to carry in October, and that plaintiffs would be entitled to
such damages only as they had sustained by the failure of defendants to carry
one of the cargoes which they were bound to carry in September.

*Heard October 22d. Decided November 28d.*

Error to Wayne Circuit Court.

The action below was for the non-performance, by de-
fendants in error, of an agreement in writing, made August
1st, 1855, of which the following are the material portions:

"*Memorandum of Agreement* between George Lord &
Co., of the first part, and H. N. Strong & Co., of the second
part, Witnesseth:

"Parties of the first part agree to deliver to vessels of
parties of second part, six full loads of lumber, as follows,
to wit: 1st. To give a load to the schooner T. Dyer, now
on her way to Saginaw; 2d. To deliver two loads, in Sep-
tember, from one to two weeks apart; 3d. To deliver two
loads, in October, about same time apart; 4th. To deliver
one load in November, probably about the 1st; and pay for
each thousand feet of lumber thus delivered by party of the
first part on said vessels, and delivered by party of the second
part in Chicago, the sum of four and one-half dollars."

"And the parties of the second part agree to carry, for
said parties of the first part, six full loads of lumber, at the
times aforesaid, from Lower Saginaw to Chicago, at the prices
aforesaid."

On the trial, it appeared that the only cargoes taken by
defendants under this agreement were, one in the month of

August, 1855, one September 29th, 1855, one October 3d, 1855, one November 17th, and one November 25th, 1855: That during the entire period covered by the contract, plaintiffs had lumber on hand, which they were ready and willing to ship under the contract: That the average of loads taken by vessels of defendants was 160,565 feet: That during the month of September the price of freights was $4 per thousand feet, during the month of October $5 per thousand feet, and during the month of November from $7 to $8 per thousand feet.

There was no evidence of any election by defendants to apply the extra cargo carried in November to the default in October or September.

The plaintiffs in error, at the trial, asked the Court to charge the jury, — "That the carrying of each cargo fulfilled the contract for the cargo then due under the contract; i. e. that the loads carried, one in September and one in October, fulfilled the contract for two loads in September, and the two loads carried in November fulfilled the contract for two loads in October, and were to be so applied, leaving a load still due in November; also to charge the jury that the plaintiffs were entitled to recover at the rate of freight in November."

The judge refused so to charge, and plaintiffs excepted.

The judge then charged: "That as it appeared that freights rose, and the difficulties and expense of transportation increased, with the advance of the season, the defendants had a right to have the extra cargo carried in November stand as a substituted performance for the cargo which the defendants failed to carry in October, and that, in this view of the case, the plaintiffs would be entitled to such damages only as they had sustained by the failure of the defendants to carry one of the loads which they were bound to carry in September."

The jury rendered a verdict for plaintiffs in error, estimating the damages in accordance with this charge.

LORD *v.* STRONG.

*Wm. Gray,* and *S. Larned,* for plaintiffs in error:

The rule of damages is, that plaintiffs are entitled to the difference between the contract and the going rates up to the last moment when performance might be made.— *Ogden v. Marshall,* 4 *Sel.* 340; 2 *Pars. on Cont.* 460, *note T.*

The court below manifestly regarded the contract as, in effect, four separate and distinct contracts. We claim its true construction to be a contract for the carriage of six cargoes. If we are right in this construction, then, clearly, as in the case of a money bond payable in installments, the next payment or performance after default would apply upon the default. If the other construction be adopted, the same result follows; for the contract provided for two loads in October, and only one was carried. On the first of November there were two defaults, — one of September, and one of October. The extra load of November was doubtless meant in lieu of one or the other. Defendants did not designate which; it was therefore competent for plaintiffs to do so. — 1 *Spen.* 180; 13 *Conn.* 453.

When neither party makes the application, the intention is left to the jury, as a question of fact. — 5 *W. & S.* 542; 3 *Ibid.* 550.

In the present case, the court did not leave it to the jury.

It will also be noticed that the load in October left on the 3d. The vessel must, therefore, have commenced loading in September, or by the 1st of October — so near that it may well be considered intended for the back load of September. In view of all the facts, time to a day could not be considered the essence of the contract; and if not, it would be disregarded. — 11 *Paige,* 352.

*J. P. Whittemore,* on same side, cited,

1st. To the point that *time* was not of the essence of the contract, and was not so treated by the parties: *Williams v. Champlin,* 6 *Ohio,* 171; *Flagg v. Dryden,* 7 *Pick.* 52;

*Brown v. Dewey,* 2 *Barb.* 28; *Edgerton v. Peckham,* 11 *Paige,* 352.

2d. As to the rule of damages: *Ogden v. Marshall,* 4 *Sel.* 340; 2 *Pars. on Cont.* 481.

*G. V. N. Lothrop,* for defendant in error.:

1. It would have been wrong in the court to charge that the stipulated load for November had not been carried. For the agreement to carry this lumber is, in effect, a distinct contract, and an action would lie at once on a default to carry any particular load. The plaintiffs had, therefore, perfect rights of action for the September and October defaults.— 2 *Pars. on Cont.* 29 *to* 32, *and cases cited.*

Now, when the defendants came to carry a load in November, in the absence of any new agreement it is to be presumed in law that they intended to carry it, and did carry it, under the contract, as they were bound to do. They were bound to carry a load in November, and they did carry a load in November. It is in fact a perfect and literal performance of their contract. In this respect the request of the plaintiffs can not be sustained.

2. By the September and October defaults of the defendants, perfect rights of action accrued to plaintiffs in each case. The plaintiffs had their election to stand on this, and call on defendants for damages, or to waive them, and accept a substituted performance. As to one load, they in fact did waive the default, and accepted the carriage of a load in November. One load remained not carried. On this the question arises, to which of the defaults should this substituted carriage be applied?

The defendants carried it when it was highly onerous for them to do so. On each default, defendants were liable in damages for any amount over the contract price that it would have cost the plaintiffs to have got the lumber carried at that time. — *Ogden v. Marshall,* 4 *Sel.* 342; *O'Connor v. Forster,* 1 *Watts,* 418. And as freights rose as the season

advanced, the latest default was attended with the largest damages. The defendants must, therefore, be presumed to have intended to have their substituted performance so applied. They were entitled to have it applied in the way most beneficial to themselves, especially when this would cause no loss or wrong to the other party.— See *Pattison v. Hull,* 9 *Cow.* 767, 770, 775 *note*; *Cremer v. Higginson,* 1 *Mason,* 333.

When it is doubtful what is the precise damage suffered, it is held that it is right to instruct the jury to give the lowest amount indicated by the evidence.—2 *Greenl. Ev.* §255.

The plaintiffs might, on default, employ another vessel, and have their lumber carried. They could not lie by until freights rose, and then charge the defendants with the increased rates.—*Miller v. Mariners' Church,* 7 *Greenl.* 57; *Loker v. Damon,* 17 *Pick.* 284.

3. The amount which the plaintiffs were entitled to recover is only such as would indemnify them for their *proximate and direct damages.*—2 *Greenl. Ev.* § 253; *Smith v. Griffith,* 3 *Hill,* 336; *Clark v. Mayor, &c.* 4 *Comst.* 342.

The law will not allow them to make a gain or speculation out of the defendants. Now, what was their legal loss and damage? It was two-fold: First, for the default in September; and, second, for the default in October. In each case the loss was measured by the difference between the contract price and the ruling rates of freight at the time of the particular default. Had the plaintiffs procured both of these cargoes to be carried at the time of default, they could charge us only with the damages indicated by the above rule. But we actually carried one cargo for them at the time when rates were the highest, and when it cost the most to make good our last default. How then can the plaintiffs claim to be injured by that default? We have stepped in and made it good at our own cost, in the very way, and at the very time, that they could have had it made good by another vessel. And they have accepted this performance by the very act of giving

us the lumber and allowing us to carry it. As to this default they are certainly indemnified.

MANNING J.:

The circuit judge was right in refusing to charge the jury as requested. If the contract had given defendants from the first of August to the last of November to carry the lumber in, it would have been immaterial at what time the several loads were carried, provided they were all carried before the close of November. Defendants were bound to carry one load in August, two in September, two in October, and one in November. There is but one contract, but it consists of separate and distinct parts, each complete in itself, and having a separate time fixed for its performance, and on each of which a right of action would accrue to plaintiffs if not performed within the time limited. In this respect the contract is analogous to a bond for the payment of money in installments. But here the analogy ceases, for the reason that the price for carrying lumber is fluctuating, which is not the case with money.

A dollar to day will be a dollar a year hence, and on every day through the year; and an installment of two hundred dollars due to day will be no more a year hence, save the interest that would be recovered by way of damages for its detention. But what we have said of money can not be said of prices for transporting lumber. If they were always the same, there would be no ground for controversy between the parties. It is this fluctuation in the prices of freight that furnished the bone of contention in the present suit. The contract required one load to be carried in August — this was done; two loads in September, one of which was carried, the other not; two loads in October, only one of which was carried; and one load in November. Defendants carried two loads in November. They failed to carry one load in September, and one in October, and carried an extra load in November. On the first of October plaintiffs

had a right of action against defendants for not carrying one load in September, and the same on the first of November for the load not carried in October. The November part of the contract was performed, and an extra load was carried in that month which was intended to take the place of one of the loads not carried, and the parties not having agreed which it is for the law to make the application. We have no hesitation in saying, in a case like the one before us, it should be applied where it will be most beneficial for defendants, provided no injury is done thereby to plaintiffs.

By the contract, defendants were to have four dollars and a half per thousand. It appears from the testimony on the trial the price of freight was five dollars per thousand in October, and between seven dollars and eight dollars per thousand in November. Plaintiffs' damages, then, for not carrying the load in September, was fifty cents per thousand, and for not carrying the load in October two dollars and a half per thousand—these sums being the difference between the ruling freights and the contract price when the several causes of action accrued. Now the excess in the price of freight over the contract price, when the extra load was carried in November, was equal to the excess in the price of freight which the plaintiffs were entitled to recover of defendants for not carrying the load in October. The two being equal, one should be set off against the other—the difference, if any, being against defendants, as the price of freight was probably higher when the extra load was carried than it was on the first day of November; the testimony showing it was from seven dollars to eight dollars in that month—seven dollars most probably the first of the month, and eight dollars at its close.

It was admitted on the argument plaintiffs' damages for a breach of the contract were the difference between the contract price and the price of freight on the day their cause of action accrued. It can not therefore be said, in setting off one against the other, any injustice is done the plaintiffs. But if

the extra load is substituted for the one not carried in September, defendants would be made to pay two dollars and a half for every fifty cents damages plaintiffs sustained by reason of defendants' breach of the contract in September — the difference between the contract price and the ruling price of freight in one case being fifty cents, and in the other two dollars and a half. Suppose defendants had not carried the extra load in November, and plaintiffs had employed some one else to carry it — they would have claimed of defendants, for not carrying the October load, two dollars and a half per thousand, and at the same time have paid to the person who carried it seven dollars per thousand, or two dollars and a half per thousand more than they would have paid defendants had it been carried by them in October. While apparently paying more than the contract price, the carriage of the lumber would, in fact, have cost them but four dollars and a half per thousand — the contract price, after applying the damages they had received of defendants.

Two objections may be made to the result at which we have arrived:

1st. It may be said, under the contract plaintiffs would have had the lumber to be carried in October, in Chicago on the first of November, whereas it was not received until the last of that month, and that, in the mean time, they may have lost the sale of it. It is a sufficient reply to this to say, they have made no claim for any such damage, and they admit the true measure of damages to be the difference between the contract price and the price of freight on the first day of November.

2d. It may also be said, if plaintiffs had known they would have to pay seven dollars per thousand for the extra load carried in November, they would have waited till the following spring before shipping it. To this, the reply is, if they intended to hold defendants for the damages the law gave them, they should have agreed with defendants as to the application on the contract of the extra load before it was

carried. This they did not do, and defendants may have intended it should cancel the October default.

We think the court was right in charging as it did, as well as in refusing to charge as requested. The judgment of the court below must be affirmed, with costs.

The other Justices concurred.